UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JUSTIN PATRICK ODLE,

          Petitioner,                    Case No. 1:21-cv-754

v.                                           Honorable Sally J. Berens

MATT MACAULEY,

          Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States Magistrate Judge.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.     Factual allegations**

Petitioner Justin Patrick Odle is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.[1] Petitioner pleaded guilty in the Emmet County Circuit Court to two counts of delivery of less than 50 grams of narcotics/cocaine, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv), and one count of being a felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f.[2] On October 1, 2019, the court sentenced Petitioner to concurrent prison terms of 5 years, 11 months to 30 years on one count of delivery, 6 years, 3 months to 30 years on the other count of delivery, and 3 years to 7 years, 6 months on the felon-in-possession conviction.[3]

Petitioner sought leave to appeal his convictions, sentences, or his convictions and sentences, to the Michigan Court of Appeals. Petitioner does not identify the issues he raised. By order entered July 20, 2020, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Odle*, No. 353254 (Mich. Ct. App. Jul. 15, 2020).[4]

---

[1] Petitioner's most recent filing indicates that he is housed at the Bellamy Creek Correctional Facility in Ionia, Michigan. (ECF No. 11, PageID.15.) The MDOC Offender Tracking Information System, however, show that Petitioner is presently housed at Carson City. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=652308 (visited Sept. 20, 2021).

[2] *See* https://micourt.courts.michigan.gov/CaseSearch/Case/C57/Detail?searchText=justin+odle&caseId=19-004945-FH&courtType=&courtNumber=24&locationNumber=&courtSystem=2&partyTypeNumber=D1&caseType=FH&petitionNumber=null (visited Sept. 20, 2021).

[3] *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=652308 (visited Sept. 20, 2021).

[4] Available at https://www.courts.michigan.gov/siteassets/case-documents/uploads/coa/public/orders/2020/353254_11_01.pdf (visited Sept. 20, 2021).

Petitioner then sought leave to appeal to the Michigan Supreme Court; however, his application was rejected because it was late.[5]

On August 10, 2021, Petitioner filed his habeas corpus petition in the United States District Court for the Eastern District of Michigan.  That court transferred the petition here, where venue is proper, on August 25, 2021.  The petition raises three grounds for relief, as follows:

> I.   The trial court violated Mr. Odle's due process rights and separation of powers principles by improperly delegating the prosecutor's authority to respond to the challenges and its own duty to resolve those challenges.
>
> II.  The trial court denied Mr. Odle's challenges to inaccurate and/or irrelevant information in the presentence investigation report in violation of statutory law and constitutional due process guarantees.
>
> III. Judicial misconduct where the judge in effect manufactured evidence to deny all challenges by Mr. Odle.

(Pet., ECF No. 1, PageID.2, 4, 10.)

The petition provides no information regarding the facts underlying Petitioner's convictions.  It also provides no information as to the procedural history of the case.  The petition does provide some detail, however, regarding the sentencing hearings that lie at the base of Petitioner's habeas grounds.

Petitioner reports that on September 23, 2019, the trial court conducted his first sentencing hearing.  The prosecutor presented only one challenge to the presentence investigation report:  an adjustment of one day to the proposed jail credit because the hearing had been moved up one day.  Defense counsel challenged several offense variables.  Counsel argued that Petitioner did not imply or display a weapon and, therefore, Offense Variable 1 should have been scored 0 points

---

[5] *See* https://www.courts.michigan.gov/c/courts/coa/case/353254/ (visited Sept. 20, 2021).

instead of 5 points.  Counsel also claimed that Petitioner should not be scored 10 points as a leader under Offense Variable 14, because this was not a multiple person offense.

The prosecutor presented additional facts at the hearing to support a score for Offense Variable 19, relating to interference with the administration of justice.  The trial court noted the additional facts were not contained in the presentence investigation report.  The prosecutor explained that he had taken the information regarding threats to a potential witness from police reports.  The judge indicated that it would be inappropriate to base the score on information that was not in the presentence investigation report and permitted an adjournment so that the information in support of the Offense Variable 19 score to be added to the report.

Sentencing resumed on October 1, 2019.  Apparently, the report was amended to reflect the information in the police reports.  Petitioner "vehemently" challenged the accuracy of the report "by way of his own testimony." (Pet., ECF No. 1, PageID.7.)  The court rejected Petitioner's testimony in favor of the hearsay report.  Petitioner's further explanation suggests that the supplemental presentence investigation report was based on police reports that were, in turn, based on a "meritless accusation by a very motivated by self-interest confidential informant." (*Id*.)

**II.   AEDPA standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

5

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[I]f a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example,

6

if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.   Discussion

#### A.   Exhaustion

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present[]" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39.

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Picard*, 404 U.S. at 277–78; *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99, 111 (1995). With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate

manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1-2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner acknowledges that he has not exhausted his state-court remedies. But Petitioner does not make clear whether he has presented his three habeas grounds to either the Michigan Court of Appeals or the Michigan Supreme Court. It is possible that Petitioner's application for leave to appeal to the Michigan Court of Appeals included his three habeas grounds. If so, he has fairly presented his claims to that court.[6] It is apparent that Petitioner has not fairly presented his claims to the Michigan Supreme Court—he submitted them too late.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). There appears to be an available procedure under Mich. Ct. R. 6.500 *et seq*.[7] Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy. To properly exhaust his claim, Petitioner would have to file a motion for relief from judgment in the Emmet County Circuit Court. If his motion were denied by the circuit court,

---

[6] If Petitioner raised his habeas issues in the Michigan Court of Appeals, that court's determination that Petitioner's claims lacked merit is entitled to AEDPA deference, as described above. If not, this Court's consideration of the claims is *de novo*. Under either standard, as described below, Petitioner's claims lack merit.

[7] If Petitioner raised his habeas grounds in the court of appeals, however, Mich. Ct. R. 6.508(D)(2) might preclude relief because his motion would then allege grounds for relief that were decided against Petitioner in a prior appeal. Nonetheless, relief is still possible if Petitioner can show a retroactive change in the law or new evidence. *Id*.

8

Petitioner would then have to appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court.  *O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'") (citation omitted).

Although the habeas statute does not allow the Court to grant relief absent exhaustion, 28 U.S.C. § 2254(b)(1), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Because Petitioner's habeas grounds fail to raise a meritorious federal claim, the Court will dismiss them even though they are not exhausted.

### B.      Sentencing issues

Petitioner raises a bevy of complaints regarding the sentencing proceedings.

#### 1.      Separation of powers

Petitioner complains that the trial judge violated the separation of powers doctrine when it took on the role of prosecutor in soliciting additional evidence to support the scoring of Offense Variable 19.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of a federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re[-]examine state-court determinations on state-law questions."  *Id*. at 67–68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id*. at 68.

9

The federal constitution calls for the separation of powers among the branches of the federal government. In *Whalen v. United States*, 445 U.S. 684 (1980), the Supreme Court noted that "the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States." *Id*. at 689 n.4. Therefore, it is not a federal constitutional issue if the state trial judge and prosecutor failed to maintain the separation of powers in connection with Petitioner's sentence. At most it is a state-law issue. *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) ("[T]he separation of powers between a state trial judge and a state prosecutor is a matter of state law."). A claim that the judge and prosecutor have not respected state-mandated separation "is not cognizable for purposes of federal habeas review . . . ." *Id*.

### 2. Consideration of evidence not originally part of the presentence investigation report

Petitioner contends that the trial court was limited to the information in the initial presentence investigation report. He argues that the trial court was not authorized to look beyond the report. Moreover, Petitioner contends that the prosecutor was bound by his initial acceptance of the report without changes such that the prosecutor could not introduce additional evidence after he expressed his satisfaction with the information in the report.

Michigan Court Rule 6.425 describes the requirement for a presentence investigation report and how the report is supposed to be used before, during, and after sentencing. Petitioner attempts to extrapolate some limit on the trial court and the prosecutor from the provisions of the rule. A claim that the court or prosecutor violated the court rule regarding use of the presentence investigation report, however, is purely a state law claim. It is not cognizable on habeas review.

### 3. Judicial bias

As a corollary of his separation of powers argument, Petitioner claims that the trial judge was biased against him. Essentially, Petitioner suggests that the trial judge went so far beyond the proper role of a judge at sentencing, it was clear that the judge was out to get Petitioner.

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' [citation omitted], before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such as those in which the "judge permit[s] himself to become personally embroiled with the petitioner," *Offutt v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905. The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997),

and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30-31 (1992); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)." *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

In *Liteky v. United States*, 510 U.S. 540 (1994),[8] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. at 583. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555–556 (emphasis in original).

---

[8] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006), abrogated on other grounds by *Johnson v. Williams*, 568 U.S. 289 (2013), and *Harrington*, 562 U.S. 86.

12

Even Petitioner's scant description of the proceedings supports the conclusion that the trial judge's decisions at sentencing were "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and, thus, "do not constitute a basis for a bias or partiality motion . . . ." *Liteky*, 510 U.S. at 555–556. Accordingly, Petitioner is not entitled to habeas relief on his bias claim.

4. **Hearsay testimony**

Petitioner complains that the trial court relied upon hearsay to score the guidelines. That is permissible under state law. In *People v. Uphaus*, 748 N.W.2d 899 (Mich. Ct. App. 2008), the Michigan Court of Appeals explained:

> Defendant now argues that the trial court deprived him of his right to confront the witnesses against him by permitting this hearsay testimony. See *People v. Chambers*, 277 Mich. App. 1, 10, 742 N.W.2d 610 (2007). However, a sentencing hearing is not a criminal trial. And many of the constitutional requirements applicable to criminal trials do not apply at sentencing. *United States v. Hamad*, 495 F.3d 241, 246 ([6th Cir.] 2007), citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The rules of evidence do not apply to a sentencing proceeding, see MRE 1101(b)(3), "and due process does not require otherwise . . . ." *Hamad*, supra at 246. Thus, when considering a defendant's sentence, a trial court may properly rely on information that would otherwise not be admissible under the rules of evidence. See *People v. Potrafka*, 140 Mich. App. 749, 751–752, 366 N.W.2d 35 (1985). Indeed, the "right to confront adverse witnesses and to prohibit the introduction of testimonial hearsay without cross-examination does not apply at sentencing." *Hamad*, supra at 246.

*Uphaus*, 748 N.W.2d at 905. The *Uphaus* opinion captures not only the state rules regarding admissible evidence at sentencing, it also accurately states the federal constitutional limitations. In *United States v. Christman*, 509 F.3d 299 (6th Cir. 2007), the Sixth Circuit set out those limitations in much the same way that the *Uphaus* court did:

> "A sentencing hearing . . . is not a criminal trial, and many of the constitutional requirements of a criminal trial do not apply at sentencing." *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007). Thus, it is well established that neither the rules of evidence nor the right to confront witnesses applies at sentencing. *Id*.; *United States v. Brika*, 487 F.3d 450, 457 (6th Cir. 2007). "Congress prefers the inclusion rather than the exclusion of information at sentencing, *see* 18 U.S.C. §

13

> 3661 ('No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.') . . . ." *Hamad*, 495 F.3d at 246.

*Christman*, 509 F.3d at 304. Petitioner cites no contrary authority, much less clearly established federal law. Thus, to the extent Petitioner raised the arguments in the court of appeals, that court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Moreover, considered *de novo*, Petitioner's claim that hearsay testimony at sentencing violated his constitutional rights has no merit.

### 5. Guidelines scoring errors

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67–68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin*, 213 F.3d at 301–02 (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Petitioner's challenges, at least in some part, contest the sentencing court's application of the state sentencing guidelines. For example, Petitioner indicates that the scoring of Offense Variable 1

14

was incorrect because the presence of a gun on the bed did not constitute possession of the gun by Petitioner nor did it constitute displaying or implying a weapon. Whether or not Offense Variable 1 was properly scored on those facts is a question of application of the sentencing guidelines. Similarly, regarding Offense Variable 14, Petitioner complains that the sentencing guidelines do not permit a score when Petitioner acted alone. That too is purely a question regarding the proper application of the guidelines. Although Petitioner challenges the scoring of Offense Variable 19 for many reasons, at least one reason is that a particular Facebook post could be construed as an attempt to interfere with justice. That also is purely a question of the proper application of the guidelines.

Such challenges are not cognizable on habeas review. As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' determination that the guidelines scoring was proper would be axiomatically correct on habeas review.

### 6. False information

Although guidelines scoring issues raise state-law claims, and not federal constitutional claims, it is well established that a court violates due process when it imposes a sentence based upon materially false information. *United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that

15

the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447.  Petitioner has not made and cannot make the showing required under *Tucker*.

Petitioner never flat out claims that the information considered by the sentencing court was "false."  He hedges by using terms like "inaccurate and/or irrelevant" or "unreliable." (Pet., ECF No. 1, PageID.4.)  Petitioner never identifies any false fact.

Petitioner does not deny that the reports included the factual background upon which the Court relied when scoring Offense Variable 19.  He certainly disagrees with those facts—vehemently.  Petitioner's disagreement shows that the facts were disputed; it does not show that they were false.  In *Townsend*, the Supreme Court made clear that an alleged error by the trial court in resolving a disputed factual question at sentencing does not constitute reliance on materially false information.  *Townsend*, 334 U.S. at 741 ("Nor do we mean that mere error in resolving a question of fact . . . would necessarily indicate a want of due process of law.  Fair prosecutors and conscientious judges sometimes are misinformed or draw inference from conflicting evidence with which we would not agree.  But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.").  Accordingly, Petitioner has failed to show that his due process rights were violated.

### 7. Insufficient evidence to support scoring Offense Variable 19

Finally, Petitioner's attack on his sentence also suggests that the result might be constitutionally infirm because it is not based on sufficient evidence.  In the context of sentencing, however, whether or not the evidence preponderated or was "sufficient" to demonstrate particular facts is not a constitutional issue.

The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc).  "[B]oth before

16

> and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[9] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ." *Id*. at 92 n.8.[10]

---

[9] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Haymond*, 139 S.Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . ."). The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt. The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne*, when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions. None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[10] Even the term "burden of proof" can be misleading. As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence." *Id*. at 695 n.20. Generally, the constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense, and the standard of persuasion is "beyond a reasonable doubt." There are times,

17

In *United States v. Watts*, 519 U.S. 148, 156 (1997), the Supreme Court noted that proof by a preponderance of the evidence at sentencing would satisfy due process, but the Court did not say that due process requires it. Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required. Thus, *Watts* was not an attempt to establish the bottom limit of constitutional propriety, it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.

Even though the State of Michigan may require that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the constitution. Consequently, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review. Petitioner's challenge to the state court's sentences based on sufficiency of the evidence, therefore, fails to show that his sentence is contrary to, or an unreasonable application of, clearly established federal law. Or, if Petitioner did not present this issue to the court of appeals, he has failed to show that the trial court's determination of his sentence by the state standard of preponderance of the evidence violated his federal constitutional rights.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

---

however, where the constitution permits the placement of the burden of production and persuasion on the defendant, for example, as to affirmative defenses.

18

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. However, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: September 24, 2021 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge